IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RAYMOND E. MOORER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:04cv874-C |
| ) | (WO) |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

Plaintiff Raymond E. Moorer ("Moorer") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a partially favorable decision, concluding that the plaintiff became disabled on August 24, 2002. (R. 19). The ALJ, therefore, granted Moorer's claim for supplemental security income benefits but denied Moorer's claim for disability insurance benefits because his insured status had expired on January 31, 2002. (R. 23). The Appeals Council rejected a subsequent request for review of the onset date decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

§§ 405 (g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .
>
> To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Moorer was 42 years old on the alleged onset date, February 21, 2001.[4] (R. 28). He was 44 years old on the date the ALJ concluded he became disabled, August 24, 2002. (*Id.*). He completed the eighth grade. (R. 28, 279). The plaintiff's prior work experience includes work as a truck driver and loader. (R. 28). Following the hearing, the ALJ concluded that, prior to August 24, 2002, the plaintiff had severe impairments of "diabetes mellitus, diabetic neuropathy, hypertension,

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

[4] Moorer filed an application for supplemental security income benefits on February 28, 2001, and an application for disability insurance benefits on March 7, 2001. (R. 18). He alleges disability since February 15, 2001. (*Id.*)

3

osteoarthritis, severe cystitis, and coronary artery disease with history of myocardial infarction in 1995." (R. 23). For the purposes of supplemental security income benefits, the ALJ concluded that the plaintiff now has severe impairments of "cardiomyopathy, atherosclerotic coronary disease, congestive heart failure, history of myocardial infarction in 1995, hypertension, diabetes mellitus, diabetic neuropathy, osteoarthritis, and severe cystitis." (R. 22). While the ALJ concluded that the plaintiff was able to perform a range of sedentary work prior to August 24, 2002, he concluded that

> as of August 24, 2002, the claimant has impairments attended with findings that meet the criteria of Medical Listing 4.04C(1)(b) and (d) of the Listing of Impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. . . . In this instance, inpatient records from Jackson Hospital reveal the claimant has coronary artery disease with 70% stenosis of the left anterior descending coronary artery and 80% stenosis of the right coronary artery. Thus, he has 70% or more narrowing of a non-bypassed coronary artery and 50% or more narrowing of at least two non-bypassed coronary arteries as required. . . . Dr. Chen's advise that the claimant "is at very high risk for sudden death" secondary to his serious heart condition, suggests the claimant's impairments result in significantly marked limitation of physical activity, even though he is comfortable at rest. In fact, I point out the claimant presented to the ER with a several-day history of shortness of breath and dyspnea on exertion. I find, therefore, that as of August 24, 2002, the claimant has impairments attended with the same findings as Medical Listing 4.04C(1)(b) and (d). Therefore, he is disabled as of August 24, 2002, but not anytime prior thereto.

(R. 22). Thus, the ALJ concluded that the plaintiff was not disabled when his insured status expired in January 2002, although he is now disabled and entitled to supplemental security income benefits. (R. 22-31).

## IV. Discussion

The sole issue before the court, as stated by the plaintiff, is "[w]hether the ALJ committed reversible error by failing to use a medical expert to establish the disability onset date pursuant to Social Security Ruling (SSR) 83-20." The plaintiff argues that because the date of onset must be inferred, the ALJ was required to utilize a medical expert to establish the date of onset. (Pl's Br. at

4

6).  The defendant concedes that "[i]f the evidence in this case was ambiguous as to onset date, . . . a medical expert should have been utilized to establish Plaintiff's onset date.  However, the evidence in this case is not ambiguous and the ALJ's decision is supported."  (Def's Br. at 4).  After careful review of the record, the court concludes that because the evidence in the record regarding Moorer's onset date is ambiguous and the ALJ did not resolve the ambiguities, this case must be remanded for further proceedings.

The plaintiff alleges a disability onset date of February 15, 2001, the date he was released from the hospital following a diabetic episode.  (R. 50, 60, 134).  The plaintiff's insured status for Title II benefits expired in January 2002.  The ALJ concluded that the plaintiff became disabled beginning on August 24, 2002, the date of another hospitalization which exposed his heart condition as putting him at risk "of sudden death."  (R. 22).  Thus, it appears that it was the second hospitalization that was the impetus for determining that the plaintiff was disabled.  However, under the facts of this case it was not proper for the ALJ to rely only on the date on which it became obvious that the plaintiff was suffering from a potentially life threatening heart condition to determine the date of onset.  The date of diagnosis is not determinative of nor equivalent to the date of onset.  *See  Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991) ("The significant date of disability compensation is the date of onset of the disability rather than the date of diagnosis.").  *See also Swanson v. Commissioner of Health and Human Servs.*, 763 F.2d 1061, 1965 (9th Cir. 1985) ("critical date is date of *onset* of disability, *not* the date of diagnosis.") (emphasis in original).

The court must evaluate the medical evidence in the record to determine whether the evidence regarding onset date of disability is ambiguous.  The ALJ relied on medical records from the plaintiff's August 2002 hospitalization to conclude that the plaintiff was disabled due to his heart

condition.  Although a heart attack may occur suddenly, the heart condition leading to an attack is not. Stenosis and blockage progresses slowly over a period of years.  *See http://www.clevelandclinicmeded.com/diseasemanagement/cardiology/cad/cad.htm*.  Moreover, evidence of this hospitalization is not the first reference in the record to Moorer's heart condition.  On his physical activities report, Moorer reports that he "can't lift nothing much due to heart attack." (R. 74).  Twice more in the report, he refers to his heart attack.  (R. 78, 79).  Medical records indicate that Moorer was hospitalized on November 6, 1995 for an open wound and drainage of scrotal and perirectal abscesses.  (R. 212).  Moorer subsequently underwent debridement of the area due to Fournier's Gangrene.  (R. 204-209).  Prior to surgery on December 14, 1995, Moorer completed a medical history form.  (R. 205). At that time, he indicated that he had suffered a heart attack and still suffers from chest pains.  (R. 205).  Moorer's history form also indicates that he underwent a PTCA[5] in January 1995 for coronary artery disease after a myocardial infarction.  (R. 205).  While a chest x-ray on December 13, 1995 revealed no abnormalities, an ECG was abnormal.  (R. 207-210).

On February 13, 2001, Moorer was hospitalized, suffering from severe cystitis,[6] uncontrolled diabetes and a history of myocardial infarction.  His treating physician at that time, Dr. Stanley Barnes, noted that Moorer "had a myocardial infarction back in 1995 requiring a cardiac cath." (R. 111).  Barnes' notes indicate that Moorer suffered a heart attack which was treated at Baptist Hospital in Montgomery, Alabama.  (*Id*.)  Hospital records indicate that Moorer's prescription medications

---

[5] PTCA is an acronym for percutaneous coronary angioplasty.  http://www.pharma-lexicon.com.

[6] Cystitis is an inflammation of the urinary bladder.  *See* http://www2.merriam-webster.com

included Zestril,[7] Norvasc,[8] Gemfibrozil,[9] Atenolol[10] and Nitrostat.[11]  (R. 65, 79, 106).

On June 8, 2001, Dr. Barnes noted that Moorer had "no chest pains or SOB[12] right now." (R. 133) However, Dr. Barnes did note that Moorer had recently experienced chest pains but his nitroglycerin prescription had expired. (R. 133).  In addition, Dr. Barnes noted that Moorer had been unable to afford his Atenolol, Norvasc, and Zestril due to a lack of funds. (R. 133).  Dr. Barnes gave Moorer some medications samples and referred him to the indigent clinic.  (*Id.*)

On September 11, 2001, the plaintiff underwent a consultative examination by Dr. Crawford. (R. 123).  At that time, the plaintiff reported to Dr. Crawford that one of his chief complaints was a heart attack six years earlier. (*Id*.).  Based on Moorer's description, Dr. Crawford opined that Moorer underwent an "angiogram and what sounds like a balloon angioplasty." (R. 126).   Dr. Crawford concluded that Moorer "did not contain all of the work related abilities such as walking, carrying, and handling objects."[13]  (R. 128).

On August 24, 2002, Moorer was admitted to Jackson Hospital suffering from shortness of

---

[7] Zestril is an ACE inhibitor drug "used for patients with high blood pressure, heart failure, or to protect the kidneys of diabetic patients."  http://www.rxlist.com, keyword Zestril

[8] Norvasc is a drug used to treat high blood pressure and is also used to treat angina (chest pains). *See Id*., keyword Norvasc.

[9] Gemfibrozil is a medication to lower levels of high cholesterol and triglycerides. *See Id.*, keyword Gemfibrozil.

[10] Atenolol is a beta blocker used to treat high blood pressure and chest pains.  "This medicine may also be prescribed to patients following a heart attack."  http://www.rxlist.com, keyword Atenolol.

[11] Nitrostat is a drug "used to prevent angina pectoris (chest pains), not to treat the acute attacks."  http://www.rxlist.com, keyword Nitrostat.

[12] SOB stands for shortness of breath.

[13] The ALJ "afford[s] little weight to the opinion of Dr. Crawford who examined the claimant on only one occasion." (R. 25).  If the Commissioner persists in this position, then the court will hereafter never place any weight on consultative examinations.

breath and dyspnea on exertion. (R. 182-193, 232-261). A chest x-ray revealed congestive heart failure. (R. 232). A cardiac catheterization indicated

> 1. Severe non-ischemic cardiomyopathy with an estimated ejection fraction of 15-20%.
> 2. Atherosclerotic coronary disease involving a 70% ostial stneosis (sic) of the second diagonal branch of the left anterior descending coronary artery and an 80% stenosis of the right ventricular branch of the right coronary artery.

(R. 235).

In reviewing the record in this case, it appears that the plaintiff underwent a balloon angioplasty and heart catheterization in 1995. He also complained to his physicians of symptoms that could have been indications of congestive heart failure shortly thereafter and continuing until 2002. Finally, Moorer was consistently prescribed medications for chest pain and angina since 1995. The ALJ, however, only highlights those portions of Dr. Barnes' medical records that support his position and then uses those selected portions to infer what Dr. Barnes' opinion on Moorer's disability would be.

> Although Dr. Barnes' examination of February 23, 2001, revealed elevated blood pressure, I note it was no more than moderately elevated in nature. On June 8, 2001, the claimant denied shortness of breath and chest pains, despite his history of coronary artery disease. In addition, Dr. Barnes found clear chest and regular heart rate and rhythm. Moreover, Dr. Barnes did not opine the claimant is disabled or restricted in work activity, despite his diagnosis of the claimant. To the contrary, regarding the claimant's application for disability, Dr. Barnes specifically stated "I'm not really sure if he qualifies from a physical standpoint to obtain these particular benefits." Dr. Barnes' statement suggests he did not feel the claimant was disabled.

(R. 24).

In this case, the ALJ picked through the medical records and chose those entries that supported his position. However, he failed to reconcile the conflicts in the evidence or to more fully develop the evidence so that he did not need to rely on unsupported inferences. It is the duty of the ALJ to

8

reconcile the differences in the medical record. An ALJ may not arbitrarily pick and choose facts from the medical evidence to support his conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839, 840-841 (11th Cir. 1992). When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected one opinion over another. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart,* 662 F.2d at 735. "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson,* 755 F.2d at 785. Moreover, "it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056- 57 (4th Cir. 1976). *See also, Gastineau v. Mathews*, 577 F.2d 356, 358 (6th Cir. 1978) ("It is not the function of this Court to resolve conflicts in the medical evidence, but rather it is the function of the Secretary, whose expertise is given great deference.") Thus, this case must be remanded for further consideration.

The plaintiff argues that because the medical evidence is ambiguous, the ALJ was required to infer an onset date of disability. Consequently, because it was necessary to infer an onset date, the ALJ could not rely on his lay opinion but was obligated to secure the services of a medical expert to make this determination. *See* Social Security Ruling ("SSR") 83 - 20. The defendant concedes that "[i]f the evidence in this case was ambiguous as to onset date, . . . a medical expert should have been utilized to establish Plaintiff's onset date." (Def's Br. at 4).

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may

9

>affect the period for which the individual can be paid and *may even be determinative of whether the individual is entitled to or eligible for benefits*. . . . Consequently, it is essential that the onset date be correctly established and supported by the evidence, as explained in the policy statement.

SSR 83-20 (emphasis added).

While the Eleventh Circuit Court of Appeals has not discussed SSR 83-20 and the requirement for a medical expert, every other circuit court of appeals which has discussed SSR 83-20 has concluded that where there is not contemporaneous medical evidence in the record to establish an onset date, an onset date must be inferred and when the evidence regarding onset date is ambiguous, SSR 83-20 requires the ALJ to call on the services of a medical expert to evaluate the evidence and assist the ALJ in his determination of an onset date of disability. This is particularly true in cases involving diseases which do not have an easily discernable onset date. *Walton v. Halter*, No. 00-1289, 2001 WL 273557, *5 (3rd Cir. March 20, 2001) ("An ALJ in a situation of this kind must call upon the services of a medical advisor rather than rely on his own lay analysis of the evidence."); *Armstrong v. Commissioner of the Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) ("If the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'"); *Morgan*, 945 F.2d at 1082 ("The Rule [SSR 83-20] suggests that when the evidence regarding date of onset . . . is ambiguous, as it is here, the ALJ should determine the date based upon an informed inference. Such an inference is not possible without the assistance of a medical expert.") (internal citation omitted); *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997) ("If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis.'"); *Bailey*

*v. Chater,* 68 F.3d 75, 79 (4th Cir. 1995) ("[I]f the evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling [SSR 83-20] requires."); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) ("We therefore hold that in cases . . . when the medical evidence regarding the onset date of a disability and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor."); *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989) (reversed and remanded to obtain additional evidence regarding the progression of the claimant's impairment and to secure the assistance of a medical advisor to determine onset date). The court finds the reasoning of these cases persuasive and clonsludes that SSR 83-20 requires the ALJ to secure the services of a medical expert when an onset date must be inferred and the evidence in the record is ambiguous as to onset date.

> It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could have reasonably determined that [the claimant] was not disabled before [the date last insured]. Rather, *when there is no contemporaneous medical evidence, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status*.

*Grebenick*, 121 F.3d at 1200-01 (emphasis added).

Although it is the plaintiff's burden to establish precisely the onset date of disability, it is clear that the law does not define the onset date by the date upon which the plaintiff becomes totally incapacitated. In this case, it appears that the ALJ's only rationale for selecting August 24, 2002, as the onset date is that is the date the plaintiff was hospitalized for chest pains. Such a determination is arbitrary and capricious. It is undisputed that in evaluating the plaintiff's claim, the ALJ did not secure the services of a medical expert to ascertain the onset date of disability. Because the ALJ failed to properly reconcile the conflicts in the evidence, the court concludes that the ALJ also failed to

properly determine whether the record is ambiguous as to when the plaintiff's congestive heart failure became disabling and whether a medical expert was necessary to establish the onset date. Thus, the court concludes that the ALJ erred as a matter of law and this case must be remanded to the Commissioner for further proceedings consistent with this opinion.

Finally, the court notes that the ALJ failed to fully develop the record regarding the plaintiff's financial ability to secure treatment. The ALJ concluded that the plaintiff's congestive heart failure is the result of his non-compliance with his diabetic treatment.

> I note the evidence demonstrates the claimant has a history of non-compliance with the medical treatment. Unfortunately, the claimant's non-compliance has resulted in severe compromise of his physical medical condition. Specifically, poor compliance with anti-diabetic treatment measures caused deterioration of his cardiovascular system to such a degree as to render him disabled.

(R. 22).

The ALJ's comment is completely gratuitous, particularly in light of the fact that there is no evidence in the record to support it. Furthermore, the ALJ did not consider the effect of the plaintiff's poverty on his failure to seek treatment. The record is replete with references to the plaintiff's financial inability to secure or follow treatment. (R. 110, 123, 133, 134, 282, 296). While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, poverty excuses noncompliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). It is clear from the record that the ALJ heard testimony that Dr. Barnes was concerned about the plaintiff's inability to pay for his medication. (R. 133). Medical evidence suggests that poverty was a factor in Moorer's ability to comply with treatment. (*Id*.).

> The patient hasn't been here in several months. He has run out of funds. He is out of medications. He's out of his insulin. He's out of everything. Unfortunately, he doesn't have a job right now and he's applying for disability and that wait could be quite some time. He has no chest pains or SOB right now. He had a spell of chest

pains the other day. Checked out his Nitroglycerin and it has expired so he's down on his luck. He has been about to get some medication through a special assistance program where the medicines are at least 6 or 8 dollars a bottle and that's pretty good since some of these medicine are 6 or 8 dollars a pill. I wish him well.

(*Id.*)

Notwithstanding this evidence, the ALJ then failed to further develop the evidence to determine whether Moorer's failure to seek or obtain treatment was due to poverty. Consequently, the court concludes that the ALJ's determination of non-compliance was not based on substantial evidence. On remand, the ALJ should more fully develop the record regarding the plaintiff's financial situation as it relates to his non-compliance. Accordingly, the court will order in a separate final judgment that the decision of the Commissioner be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

Done this 26th day of September, 2005.

          /s/Charles S. Coody
      CHARLES S. COODY
      CHIEF UNITED STATES MAGISTRATE JUDGE